**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 17, 2022**

# In the Court of Appeals of Georgia

A21A1418. LOUALLEN v. THE STATE.

PHIPPS, Senior Appellate Judge.

Jerry Wayne Louallen was tried by a jury and convicted of trafficking in methamphetamine. On appeal, Louallen contends that the trial court erred by denying his motion to suppress drugs found following a search of his truck during a traffic stop and, in the alternative, that his trial counsel rendered ineffective assistance by failing to preserve that issue for appeal. For the following reasons, we affirm the denial of his motion to suppress on the merits, as a result of which his ineffective-assistance claim necessarily fails.

"In reviewing a ruling on a motion to suppress, [an appellate court] review[s] the trial court's factual findings for clear error and its legal conclusions de novo." *White v. State*, 307 Ga. 601, 602 (2) (837 SE2d 838) (2020). "In addition, in

reviewing such a ruling, an appellate court must construe the evidentiary record in the light most favorable to the trial court's factual findings and judgment." Id. (citation and punctuation omitted).

So viewed, the evidence shows that on October 23, 2017, a state trooper was in radio contact with Drug Enforcement Administration agents, who informed him that someone had obtained what was thought to be illegal narcotics while in the area of Dawson Boulevard and Jimmy Carter Boulevard in Gwinnett County. The trooper, who was told that the suspect was a solo male driver in a gray Dodge Ram truck, located the truck on the I-85 southbound ramp at Jimmy Carter Boulevard. DEA agents were following the vehicle. The DEA agents notified the trooper that the driver had confirmed he had "the product" in his vehicle, and agents requested the trooper to make a traffic stop. While he was behind the gray Dodge Ram, the trooper observed that the vehicle had a brake light out and saw the vehicle make an improper signal. Just before initiating the stop, the trooper verified with the DEA agents that the truck he was following was the target vehicle.

When he approached the vehicle after making the traffic stop, the trooper noticed three cell phones in the center console of the vehicle. The trooper testified that, based on his training and experience, having three cell phones is common for

narcotics traffickers. In response to a request for his license, the driver, Louallen, initially only provided an identification card. Louallen later produced a driver's license when the trooper pointed out that he had been given an identification card. During their discussion, Louallen said that he had traveled to Augusta that day, which the trooper knew to be untrue based on his communications with the DEA agents. When asked "if he had been in any trouble before," Louallen responded that he had been arrested for one or more methamphetamine offenses in the past and had served a prison sentence.

After filling out a written warning, the trooper checked Louallen's driver's license on his car computer and prepared and printed a consent to search form. The trooper obtained both oral and written consent to search the vehicle from Louallen. Prior to the search, Louallen confirmed that everything inside the vehicle belonged to him. The trooper then searched the vehicle and found a plastic bag containing a cookie box. Inside the cookie box was approximately half a kilogram of methamphetamine. Louallen was subsequently indicted for trafficking in methamphetamine.

Louallen filed a motion to suppress the evidence seized during the traffic stop. A hearing on the motion was held after jury selection. After the hearing, the trial court

denied Louallen's motion to suppress. The trial court found that there was a legal basis for the traffic stop and, based on the collective knowledge and observation of all officers involved in the investigation, there was probable cause for the search of the vehicle. The trial court also found that Louallen gave valid oral and written consent to search his vehicle.

After a jury found Louallen guilty of trafficking in methamphetamine, Louallen filed a motion for new trial, which he amended with new counsel. The trial court denied Louallen's motion for new trial in an order in which the court made detailed written findings supporting its denial of Louallen's motion to suppress. This appeal followed.

1. Louallen contends that the trial court erred by denying his motion to suppress. Pretermitting whether Louallen waived this issue,[1] we find no error.

Louallen concedes that the trooper was authorized to initiate the traffic stop due to a brake light violation. He argues, however, that the trooper unlawfully expanded the scope of the traffic stop when he asked Louallen for permission to

---

[1] Louallen and the State agree that this issue was properly preserved for appellate review. Because we affirm the denial of Louallen's motion to suppress on the merits, which necessarily also disposes of his derivative ineffective-assistance claim, we need not decide whether the suppression issue was preserved.

search his vehicle and that the evidence seized as a result of the improper search should have been suppressed. Louallen contends that the documented mission of the stop was complete when the trooper finished writing the warning for the brake light and signal violations.

It is well established that "when an officer observes a traffic offense, the resulting traffic stop does not violate the Fourth Amendment of the United States Constitution even if the officer has ulterior motives in initiating the stop, and even if a reasonable officer would not have made the stop under the same circumstances." *Hall v. State*, 351 Ga. App. 695, 699 (1) (832 SE2d 669) (2019) (citations and punctuation omitted). However, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." Id. (citations and punctuation omitted). And, "after the tasks related to the investigation of the traffic violation and processing of the citation have been accomplished, an officer cannot continue to detain an individual without reasonable articulable suspicion." Id. at 699-700 (1) (citations and punctuation omitted). "[I]mportantly, 'reasonable articulable suspicion' requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity." Id. at 700 (1) (citations and punctuation omitted).

5

Here, the trooper had reasonable articulable suspicion that Louallen was involved in criminal activity — other than mere traffic violations — when the trooper initiated the traffic stop. "This is because reasonable articulable suspicion need not be based on an arresting officer's knowledge alone, but may exist based on the collective knowledge of the police when there is reliable communication between an officer supplying the information and an officer acting on that information." *Hall*, 351 Ga. App. at 700 (1) (citations and punctuation omitted). Before the trooper stopped Louallen's vehicle, DEA agents informed the trooper that the driver of Louallen's vehicle was suspected of engaging in a drug transaction shortly before the traffic stop. This collective knowledge gave the trooper reasonable articulable suspicion, which justified the trooper's request for permission to search Louallen's vehicle. See *Hall*, 351 Ga. App. at 699-700 (1). From its inception, the investigation that warranted the detention in the first place encompassed both the traffic violation and the suspected drug transaction. Consequently, the mission of the traffic stop was not complete until, at the earliest, Louallen either gave or denied permission to search the vehicle. Contrary to Louallen's argument, the trooper's request for permission to search the vehicle did not improperly expand the scope of the traffic stop. Accordingly, the trial

6

court did not err in denying Louallen's motion to suppress the evidence seized from his vehicle.

2. As an alternative argument, Louallen contends that he received ineffective assistance of counsel because his trial counsel failed to preserve his challenge to the admissibility of the drug evidence. However, our ruling affirming the denial of Louallen's motion to suppress necessarily disposes of his claim insofar as he cannot establish prejudice resulting from any alleged deficient performance. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984) (to prevail on an ineffective assistance of counsel claim, a criminal defendant must prove both that his trial counsel's performance was deficient and that he was prejudiced by this deficient performance); *Fernandez v. State*, 275 Ga. App. 151, 156-157 (3) (b) (619 SE2d 821) (2005) ("When urging ineffective assistance of counsel on the basis of counsel's failure to preserve the right to appeal from the denial of a motion to suppress evidence, appellant must show that, had the suppression issue been preserved, the appellate court would have found it meritorious and reversed the conviction on that basis.").

*Judgment affirmed. Rickman, C. J., and McFadden, P. J., concur.*

7